## C. W. Jones for use of Rebecca Stevens, Appellee, v. Aetna Insurance Company, Appellant.

### (Not to be reported in full.)

Appeal from the Circuit Court of Moultrie county; the Hon. WILLIAM K. WHITFIELD, Judge, presiding. Heard in this court at the October term, 1915. Reversed with findings of facts. Opinion filed April 21, 1916. Rehearing denied June 30, 1916. *Certiorari* denied by Supreme Court (making opinion final).

### Statement of the Case.

Garnishment proceedings by C. W. Jones, for use of Rebecca Stevens, plaintiff, against the Aetna Insurance Company, garnishee. From a judgment for plaintiff, the garnishee appeals.

Rebecca Stevens, having recovered a judgment against C. W. Jones, commenced garnishment proceeding against the garnishee to subject funds alleged to be in its hands and due C. W. Jones on a policy of fire insurance covering the latter's stock of merchandise to the payment of the judgment. The defendant claimed that as the result of the insured's notation of certain clauses of the policy, viz., to keep property unincumbered, to keep books of account and an inventory of goods in a safe, such policy became void and no money was due the insured thereunder.

EDWARD C. CRAIG, DONALD B. CRAIG and JENNINGS & ELDER, for appellant; CHARLES B. OBERMEYER, of counsel.

E. J. MILLER, McLAUGHLIN & THOMPSON and C. ROY PATTERSON, for appellee.

MR. PRESIDING JUSTICE ELDREDGE delivered the opinion of the court.

## Abstract of the Decision.

1. GARNISHMENT—*when answer of garnishee to interrogatory does not constitute waiver of defenses.* In garnishment proceedings against a fire insurance company to recover money alleged to be due the principal debtor on account of a fire loss where among other defenses, the defendant set up that the policy became void because of the placing of certain chattel mortgages upon the property insured, *held* that the defendant, by stating, in answer to an interrogatory as to whether it had ever adjusted or paid any loss on such property, that it had not, and that it was not liable under such policy because it had become void on or about a certain date (the date of one of the mortgages), did not waive the other defenses set up, inasmuch as it could not be presumed that, by mentioning the date of one of the chattel mortgages, in the manner it did, it intended to refer to it as the only reason why such policy became void.

2. GARNISHMENT, § 98*—*what is question at issue in garnishment cases.* In garnishment cases, the question at issue is whether the garnishee is indebted to or has any property of the debtor in his possession at the time of the answer.

3. INSURANCE—*when insured must comply with provision of fire policy to keep books of account in iron safe.* A clause in a fire insurance policy requiring books of account to be kept in an iron safe at night is reasonable and valid and must be complied with by the insured to entitle him to recover for a loss.

4. PRINCIPAL AND AGENT, § 203*—*when notice to agent not notice to principal.* The rule that notice to an agent, while acting within the scope of his authority and in reference to a matter over which his authority extends, is notice to the principal, does not apply where the facts show collusion, between the agent and the one with whom he is dealing, to defraud the principal, or where the facts and circumstances are such as to raise a clear presumption that the agent will not perform his duty.

5. INSURANCE, § 264*—*when placing chattel mortgage on insured property with connivance of agent renders policy void.* The placing of a chattel mortgage on insured property in violation of the terms of the policy, though done with the knowledge of the agent of the insured who advised that such fact be kept secret, *held* to render the policy void, as such facts showed collusion and an intent to defraud the insurer, notice of such mortgage never having been communicated to the insured.

6. INSURANCE, § 287*—*what does not constitute set of books within fire policy.* Evidence *held* to show that a system of keeping accounts known as the "McCaskey system" was in no sense "a set

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

of books showing a complete record of business transacted, including all purchases and sales, both for credit and exchange, together with the last detailed inventory of stock," as required of an insured under a fire insurance policy.

7. EVIDENCE, § 366*—*when evidence incompetent as amounting to conclusion of witness.* On the question as to whether an insured under a fire insurance policy kept accounts in accordance with the requirements of the policy, testimony of a witness that while he did not know how such accounts were kept he did know that the agent of the insurer, who had written the policy, knew how and where they were kept, *held* incompetent as being the conclusion of the witness.